ELIZABETH B. POWELL, Respondent, *v.* WILLIAM M. MORRISON AND RUFUS J. LACKLAND, Appellants.

*Notes—Description of Payee—Evidence.*—The words "sheriff of St. Louis county" after the name of the payee of a promissory note, are merely descriptive of the person of the payee and endorser. An endorsee for value, in good faith, before maturity, is not by such description charged with notice of a trust. Dryden, Judge, dissenting.

*Appeal from St. Louis Circuit Court.*

*Glover & Shepley,* for respondents.

The promissory note in question was trust property. It had been executed to James Castello, sheriff of St. Louis county, to secure the purchase money in part of real estate sold by said sheriff in a proceeding in court for partition under our statutes. It was by the statute the duty of said officer to hold the note in his own possession, collect it and pay over the moneys so collected to parties in interest, litigants in court, or deliver the note on going out of office to his successor in office. He had no other duties in regard to the note; he had no legal power to pass away the title to the note, neither to pledge nor sell it; nor had the court under said statutes any power to authorize him to make any other

disposition of this property than as mentioned above. In selling the note to the defendants, Castello committed a breach of his trust. (See Act concerning Partition, R. C. 1855, p. 1115, § 28; p. 1116, § 35.)

These clauses show that Castello took no interest in the note save as a trustee, he being the instrument of the law to carry out its requirements. The fund in his hand was in the custody of the court, and the parties in interest were under the protection of the court. The fund at the moment when the sheriff undertook to sell it in the market, was so completely in the power of the court, that the court might have ordered him to pay the proceeds when collected to a stranger to the record. (13 Mo. 553; see id. §§ 39, 40, 41, 42, 43, p. 1118.)

That the assignment of the note to defendants was a breach of his trust, is seen in the fact that by passing it to them he placed it beyond his power to comply with any of his duties. After the assignment and delivery of the note to defendants, he could not hold the note, nor collect it, nor pay over proceeds, nor comply with any order of court which it might be the duty of the court to make. The assignment and delivery of the note to defendants as their property, was an absolute abandonment of every trust which the law attached upon it in his hands: It was a fraud upon the court of which he was the officer, in this: the court had ordered the property sold on credit and the funds vested in mortgage, and the notes to be collected when due, and not before, and the sheriff had no power to anticipate the falling due of the paper in any way. To have received payment from the makers before due, would have been a fraud upon the court; much less could he hawk about the street such official securities for sale whether due or not. This he knew was a breach of trust.

But it was a breach of his trust whether he knew it or not; and it was a breach of the trust in every one who was party to his act with notice, that the note was trust property. (17 Vesey, 485, goes to the same point; 2 Head, 14; 1

id. 326; 4 Dessauss. 459; 1 Myl., 8 Keen, 127; 6 Tred. 376; 1 Gill & John. 305.) The breach of trust was a sale without power. Any breach of trust fixes responsibility on an assignee with notice. (3 How. U. S. 333; 4 John. Ch. 38, 47; 2 id. 62; 12 Ala. 305; 1 Sme. & Marsh. 208; 18 Mo. 147; see 6 Call. 355, 362.)

The defendants had full notice of the trust. What is it that is sought to be brought home to the knowledge of the defendants? why, that the note which Castello was assigning to them was not his individual property, but property which he had received in his official capacity as sheriff, which therefore belonged to some suitor or suitors in court; property, therefore, clothed with official trusts—that is all. The trust is written on the face of the note; and nothing more could be done, or is ever done, in such a case. In Rozier v. St. François County, (unprinted decision,) the court held, "the words road and canal fund" on the face of the note is notice. As to notice of a trust on the face of a paper, see Byles on Bills, 121; 14 Pet. 318; 1 Barn. & Ad. 528; 5 Wend. 566; 2 Sme. & Marsh. 687; 20 Mo. 105; 8 Taun. 103; 1 Atkyns, 522; 4 Ohio, 446–458; 3 Russell, 273; 2 Hare, 172, 175; Doug. 615; 8 Barn. & Cress. 622.

Is it reasonable to suppose that the defendants were not convinced when they saw the note payable to "James Castello, sheriff of St. Louis county," that it was an official note? that it did not occur to them that it was most probably an official note? Suppose the plaintiff had been present and had said to the defendants, "that note was given to Castello as sheriff in the course of his official duties, and belongs to *cestui que trusts*, and he has no power to sell it"; there is no doubt this would have been notice to put them on inquiry; and had they made no inquiry, they would have been affected with notice. But does not the paper itself do all this? Certainly it does. The paper is better than any oral notice, because it is incapable of falsehood. It suggests every thing to defendants; and had they inquired—had they gone to the sheriff's office, they would have learned all. As to what puts

one on inquiry, see the following: 2 Pa. 439; 3 How. U. S. 333; 1 Cow. 622; 2 Dev. & Battle, Eq. 365–6; 3 Pa. 69; 7 Conn. 324. As to recitals and statements in title papers, see 2 White's L. Eq. C., Pt. 1, 153. The purchaser is affected with notice of every thing on the face of his title papers. (1 Yerg. 360; 2 Barr. 32; 4 Watts & Searg. 469; 6 B. Mon. 67; 1 A. K. Marsh. 165; 4 How. 237; 1 Sto. Eq., § 400; 7 Mon. 599; 5 Rand. 195; 5 Bin. 456; 6 id. 119; 1 Dall. 64; 1 T. R. 763.)

After much research we have found no case where such a statement has not been held notice to the holder of the paper of the fact stated.

*Lackland, Cline & Jamison*, for appellants.

The court erred in admitting the record of the partition suit between plaintiff and others in the Land Court, and in admitting the copy of the deed of trust made by Pottle & Bailey to John S. Watson, as trustee of Castello, and in admitting the testimony of the witnesses Hunt, Tallis and Cline; because the law presumes and defendants were, in fact, innocent endorsers and holders of the note described in plaintiff's petition before its maturity for value, and in the regular course of trade and business, and such evidence was not competent to affect the rights of defendants. Although Castello may have fraudulently assigned the note to defendants, if they were not privy to the fraud, they cannot be affected by it. Fraud is not presumed, but must be proven. (Field et al. v. Liverman, 17 Mo. 218–221; Little, Interpleader, v. Eddy et al., 14 Mo. 163.)

The remaining instructions, asked for by defendants and refused by the court, present the following propositions of law, to-wit:

1. That James Castello was the legal proprietor of the note, and had the legal right to assign it by endorsement and delivery.

2. That the words "sheriff of St. Louis county" in the body of the note, and the word "sheriff" on the back of

the note, do not limit or restrict the property of Castello in the note, nor do they impart any knowledge to defendants of any outstanding equities in favor of third parties. (Freeman et al. v. Camden et al., 7 Mo. 298; Bryant v. Durkee, 9 Mo. 169; Jeffries v. McLean, 12 id. 538; Thornton v. Radkin, 19 id. 193; Trumbull v. Freret, 5 Mar. R., N. S., La. 703; Lipscomb et al. v. Ward et al., 2 Texas, 277.)

3. That the note in question is a negotiable instrument, and if it was assigned by Castello, by endorsing and delivering it to defendants, before maturity, for value, without notice, in the usual course of trade, they thereby obtained such a title to the note as cannot be affected by any equities residing in plaintiff. It is deemed well settled now by the decided cases, that notice of equities attached to the paper must be brought home to the holder, so as to amount to gross negligence on his part, or he will be protected if he be a holder for value before maturity. (Goodman v. Simonds, 20 How. U. S. 343, 367–8, and cases there cited by Clifford, Jr.)

4. That Castello, being the legal proprietor of the note, had the right to assign it to defendants; and if they became the endorsers of said note for value in the usual course of trade, it is entirely immaterial whether the defendants knew that the note was given for real estate sold in partition in which plaintiff had an interest.

5. If the defendants discounted the note before its maturity, and paid the money over to Castello at that time, without any knowledge as to how the money paid by them to Castello was to be applied, although they may have done so with the knowledge that the note was given as part of the consideration of real estate sold in partition in which plaintiff was interested, such facts do not entitle the plaintiff to recover.

6. Although the note may have been negotiated or assigned to defendants by Castello, with the knowledge on the part of the defendants that the note was given in consideration of real estate sold by Castello, in which plaintiff had an interest, and that Castello held the note as trustee for the par-

ties interested in said partition suit, including the plaintiff, these acts are not inconsistent with the duty of Castello as such trustee ; and if defendants paid over the proceeds or money given for the note to Castello, without the knowledge that it was to be converted to his own use by paying his own debt with it, the defendants are not liable in this suit.

The note described in the plaintiff's petition is a negotiable instrument under the laws of this State, and the rules of law which give the right to a *cestui que trust* to follow the trust property into the hands of a vendee or assignee do not apply.  The safety of commercial relations requires a different rule. (Murray v. Lylburn, 2 Johns. Ch. 443–4.) The assignee of negotiable paper can only be affected by equities attached to the instrument of which he has notice at the time of the assignment.  (Gullet v. Hay & Orten, 15 Mo. 399.) And those equities only attach to negotiable instruments in favor of prior parties thereto, when such instruments are sought to be inferred by an assignee or endorsee against such prior parties.  The plaintiff is no party to this note in question.  The note is made by Pottle & Bailey, payable to the order of James Castello, and by him endorsed.  There is, therefore, no equity attached to this note in favor of plaintiff, which is available as against the defendants.  (Murray v. Lylburn, 2 Johns. Ch. 442 ; Sto. on Bills, § 187.)

The words " sheriff of St. Louis county" in the body of note, and the word " sheriff" on the back, are merely *descriptio personæ* and have no other effect.  They neither limit the property of Castello, as the legal owner of the note, nor do they tend to impart notice to the defendants of any equities attached thereto.  (Jeffries v. McLean's Executor, 12 Mo. 538 ; Thornton v. Rankin, 19 id. 193 ; Trumbull et al. v. Freret, 5 Martin's La., N. S., 703.)

BATES, Judge, delivered the opinion of the court.

The plaintiff, Powell, was party to a suit in partition of land, in which suit a judgment was rendered determining the respective interests of the parties ; and the property be-

ing incapable of division was, by order of the court, sold by the sheriff and bought by Pottle & Bailey. The sale was partly upon credit, and Pottle & Bailey gave to the sheriff their notes for the deferred payments, and to secure the payment of them gave a deed of trust of the property bought by them. One of the notes given by Pottle & Bailey was endorsed in blank by the sheriff, who, through a street-broker, sold the same to the defendants, who, at the maturity of the note, received payment of it from the makers, Pottle & Bailey. This suit was brought to recover of the defendants a portion of the proceeds of the note, equal to the plaintiff's interest in the land, which the note (in part) represented.

The Circuit Court gave judgment for the plaintiff. The note was as follows: " $7.258.85\frac{1}{4}$. St. Louis, May 28, 1857. Three years after date, I promise to pay to the order of James Castello, sheriff of St. Louis county, seven thousand two hundred and fifty eight $\frac{85}{100}$ dollars, for value received, negotiable and payable without defalcation or discount, with interest from date at the rate of six per cent. per annum. Moses L. Pottle, Romanzo N. Bailey. May 28–31." And it was endorsed as follows: " James Castello, sheriff."

The deed of trust which secured the payment of the note, described *cestui que trust* as " James Castello, sheriff of the county of St. Louis, State aforesaid ; and after describing the property added these words : " the property herein conveyed being the same property purchased at sheriff's sale on the 28th day of May, 1857, in the case of Jane Powell et al.;" but did not recite or state in any manner that the notes secured thereby were given for a part of the purchase money of the land sold by the sheriff. The defendants when they bought the note did not know that the sheriff (Castello) was the seller; they getting it from a broker, without knowing who was his principal. They acquired it for full value, in actual good faith, and without any doubt of their perfect legal and equitable title to the note and its proceeds. There was judgment for the plaintiff. The principal question therefore is, as to the effect of the words on the face of the

note, " sheriff of St. Louis county," and the endorsement, " James Castello, sheriff."

It is with some doubt and hesitation that I have come to the conclusion, that those words should be regarded as merely descriptive of the person of the payee and endorser; but there does not appear to be sufficient reason to distinguish this case from those in which the person mentioned in the paper or instrument is also described as trustee, agent, guardian or administrator, and in which those words are held to be merely words of description of the person.

In this view of the case the judgment of the lower court must be reversed and the cause remanded.   Judge Bay concurs ; Judge Dryden dissents.