G. EYERMAN, Appellant, *v.* SECOND NATIONAL BANK, Respondent.

February 27, 1883.

1. OFFICERS — NOTICE — PRESUMPTIONS. — The fact that money is deposited in bank by a county treasurer raises no presumption that it belongs to the county.

2. —— DESCRIPTIO PERSONÆ. — That the words "county treasurer" are added to a depositor's name on his checks and pass-book does not give notice that the depositor holds the fund as such treasurer.

3. NOTICE. — One who has notice of such facts as put him upon inquiry is bound by every fact which an inquiry would have disclosed.

4. —— PRACTICE. — The question of notice is one for the jury.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*

A. R. TAYLOR, for the appellant.
NOBLE & ORRICK, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

Herman Rechtien was county treasurer of St. Louis County before and at the time when the scheme of separation went into effect, and the plaintiff was one of the sureties on his official bond. He had, at the same time, on deposit in the National Bank of the State of Missouri, the sum of $17,705.28 belonging to the school fund of the old county. Afterwards, the proper authorities of the new county, and of the city of St. Louis, made a joint demand upon Rechtien for these moneys, but were refused payment. The same authorities thereupon instituted a suit upon his official bond, on the same account, and obtained a judgment for $14,337.90 against the treasurer and his sureties. The sureties satisfied the judgment and were, by a proper instrument, subrogated to whatever right or claim was held by the city and county, or either of them, to the money on deposit, as stated, and especially to the specified part thereof which is the subject of the present suit. The plaintiff, by assignment from his co-sureties, became sole holder of the claim here sued upon. Pending the transactions above recited, in June, 1877, the State National Bank failed, and its affairs went into the hands of a receiver, under the act of Congress. On June 27, 1877, the receiver issued and delivered a certificate showing that "Herman Rechtien, county school treasurer," was a creditor of the bank, to the amount of $17,705.28, on account of "balance as per pass-book." On August 30, 1877, the receiver delivered to Rechtien a draft for $2,655.79 drawn by the United States comptroller of the currency on the United States assistant treasurer at New York, payable to the order of "Herman Rechtien, county school treasurer," being for the first dividend from the bank assets, upon the deposit indebtedness before mentioned. This draft was

indorsed and transferred, for its face value, by Rechtien to the defendant corporation, which afterwards collected and appropriated the amount to its own use. The plaintiff sues for the same, as assignee of the rights of the city and county. The circuit court instructed the jury that, upon the facts shown, the plaintiff was not entitled to recover.

The fact that a man is county treasurer furnishes no presumption that money deposited by him in a bank is the property of the county. The bank, in receiving the deposit, becomes debtor to him as an individual. This relation between the parties is not changed by the addition of "county treasurer" to his name in the bank account books, or in the checks drawn by him. It has been frequently held that such additions impart no notice that the fund is held in a fiduciary capacity, and that they have no legal significance beyond a description of the person. Thus, "Herman Rechtien, county treasurer," may be a form intended only to show that the person is not some other having the same name, who is not county treasurer. Every legal presumption, as between the parties, is in favor of the personal ownership of the fund by the depositor; and, if nothing more appears, the bank must be guided, in all its transactions, by these presumptions. The principle is the same that was recognized in *Powell* v. *Morrison* (35 Mo. 244), though with a different application. There, a promissory note given in the purchase of lands sold in partition was made payable to "the order of James Castello, sheriff of St. Louis County." The payee sold the note before maturity, and one of the partitioners sued the transferee for his share of the partition proceeds contained in the note. It was held that the words "sheriff of St. Louis County" imparted no notice to the indorsee, of the trust attached, but were merely descriptive of the payee, and the plaintiff could not recover. A like conclusion was reached in *Thornton* v. *Rankin* (19 Mo. 193), where, upon a sale of real estate belonging to certain minors, a note

was made payable to their guardian, by the description
"Isaac J. Cooper, guardian, etc.," and by him transferred
to an indorsee without other notice of the facts. So, in
*Fletcher* v. *Schaumburg* (41 Mo. 501), it was held that
a distributee in partition could not set up her distributive
interest against her note given at the sale, and indorsed by
the sheriff, with his official addition, to an innocent pur-
chaser. It must be observed that, in each of these cases,
the decision was founded squarely on the propositions that
the *descriptio personæ* imparted no notice of the existing
trust, and that the indorsees had, in fact, no notice thereof
from any other source. They were entitled, therefore, to
be treated as if no such trust existed. Following up the
principle on this basis, it is easy to perceive that the comp-
troller of the currency, representing the depositary, did
right in delivering the dividend draft to Rechtien, who was
the depositor described as "Herman Rechtien, county
treasurer." The defendant corporation, if there was
nothing more before it, ran no risk in purchasing the draft
from the same Herman Rechtien, and acquired a title which
could not be interfered with by the city or county, or their
assignee, by reason of the descriptive words appended to
his name. If this is to be considered as the whole case, the
court properly instructed the jury that the plaintiff could
not recover.

But, at this point, we find that certain vital considera-
tions appear to have been overlooked. Among the allega-
tions in the petition, which an agreed statement admits to
be true, are those to the effect that the money deposited by
Rechtien in the State National Bank was, in fact, not his
own, but belonged to the city and county of St. Louis;
and, further, that the authorities of these municipal divi-
sions made a formal demand upon him for the money, which
was refused. This demand and refusal put a stop to his
lawful custodianship, and made him a wrong-doer. The
authorities could then have maintained *assumpsit* against

Rechtien, or the bank, as for money had and received to their use. *Adams* v. *Farnsworth*, 15 Gray, 423 ; *Holderness* v. *Baker*, 44 N. H. 414; *University of Maryland* v. *Williams*, 9 Gill & J. 365.   Such being the facts, it will not be disputed that the city and county, or their assignee, might pursue the fund into the hands of any person having notice of the true ownership.   Thus, by way of comparison with the Missouri cases already cited, we may refer to *Renshaw* v. *Wills* (38 Mo. 201), which was another case of a note given in a partition sale to a sheriff, with his official addition, and by him indorsed to a purchaser, for value.   The indorsee, in that case, had notice of the fiduciary belongings of the fund, in a deed of trust which described the note and the partition sale, and which was handed to him with the note.   The supreme court held that the notice deprived him of all protection, and he could not recover upon the note, against a distributee in the partition.   In *Ranney* v. *Brooks* (20 Mo. 105), a note was given, in partition proceedings, to " John P. Edinger, sheriff of Cape Girardeau County, Missouri, * * * for value received, in the purchase of a tract of land sold to make partition thereof amongst the heirs of Joseph Whitney, deceased."   The note was assigned, for value, by the sheriff, before maturity, and before the expiration of his term of office.   It was held that the recitals in the note imparted notice of the trust to the indorsee, which was fatal to his title, as against a succeeding sheriff who was directed to collect and distribute the proceeds of the sale.

In the case before us, there was testimony tending to show that Rechtien had frequent consultations with several of the directors of defendant on the subject of his financial relations with the city and county, particularly with reference to the demand made upon him by the authorities for the $17,705.28, school moneys, on deposit in the State National Bank, part of which was represented by the divi-

dend draft in controversy, and the suit instituted against him on the same account; that they advised him not to yield to these demands, because it was not believed that the scheme and charter had been adopted; that they were sureties on his general bond as county treasurer, and held the receiver's certificate for the amount deposited by him in that capacity in the State National Bank, and one of these directors went with Rechtien to the receiver to draw the dividends on the county deposit and the school deposit, one of which was drawn by the director, and the other by Rechtien in his presence; that upon their return to the defendant's banking office, the same director instructed the cashier to cash the dividend draft so procured by Rechtien, which was done. We think that while the *descriptio personæ* was insufficient of itself to impart notice that the dividend draft represented a deposit of money belonging to the city and county, yet all the other facts, when considered in connection with it, made at least a showing proper to go to the jury, for their determination of the question, whether such notice reached the defendant, through its officers, at or before the cashing of the draft. The instruction given was therefore erroneous.

No importance can be attached to the fact that the official representatives of the city and county refused to accept an assignment of Rechtien's claim upon the bank, in full satisfaction of their demand against him. Their refusal to ratify his deposit could not deprive them of any right in the money deposited. Nor could their refusal of less than they were entitled to, when tendered with unsatisfactory conditions, amount to a disclaimer of their title to the whole, or to whatever they might be able to realize by other means. All the judges concurring, the judgment is reversed and the cause remanded.