## Commonwealth ex rel. Board of Education of Lawrenceburg et al. v. Federal Land Bank of Louisville.

(Decided December 4, 1928.)

### Appeal from Anderson Circuit Court.

1. Subrogation.—Generally right of subrogation arises where one has advanced money under agreement, expressed or implied, with either debtor or creditor that he should be subjected to rights or remedies of creditor, because one thus advancing funds is not a "volunteer."

2. Subrogation.—Doctrine of subrogation is a pure unmixed equity, having its foundation in principles of natural justice.

3. Subrogation.—In enforcing right of subrogation, purpose always is to make application of equitable principles to particular facts, and to effectuate administration of natural justice between all parties concerned.

4. Subrogation.—Bank, in good faith loaning money to sheriff with which to pay his vendor, held entitled to be subrogated to rights of vendor under his purchase-money lien, as against board of education claiming lien given taxing district, under Ky. Stats., sec. 4130, for taxes collected by sheriff and not accounted for.

F. R. FELAND and STANLEY TRENT for appellants.

POLK SOUTH, JR., and W. L. ROGERS for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

Oscar Mayes became sheriff of Anderson county in January, 1922, for the ensuing four years, and executed

bond as provided by law with the Fidelity & Casualty Company of New York as surety. As sheriff he collected the taxes levied for the benefit of the board of education of Lawrenceburg.

Alleging that the sheriff had failed to account for $1,654.74 of taxes for the year 1923, this suit was brought by the commonwealth, on relation of the board and its treasurer, against Mayes and his surety, to recover the amount, with interest. It is alleged in the petition that Mayes owned two tracts of land in Anderson county, one containing 30.3 acres, and the other 103.5 acres, and the lien given the taxing district by section 4130 of the Statutes was asserted. Under an agreement with the surety, the smaller tract had been sold on August 16, 1926, for $4,425, which was paid to the Anderson National Bank as trustee for the satisfaction of a purchase money lien' due Julia A. Frazier of $2,000, the balance to be held by the bank subject to the rights of the parties. It does not appear what became of this balance, but it is not involved here. As to the larger tract, it was shown to have been conveyed to Mayes by J. S. Searcy on May 24, 1923, and that Mayes executed a mortgage on August 17, 1923, to the Federal Land Bank of Louisville, as security for a loan of $3,500. The Anderson National Bank and the Federal Land Bank were made parties defendant. The plaintiffs prayed a personal judgment for the amount claimed against Mayes and the surety company, and asked the enforcement of the statutory lien. It admitted the purchase-money lien on the proceeds of the smaller tract was superior: but it was asserted that the mortgage of the Land Bank was inferior to the statutory lien.

The Land Bank controverted the allegations of the petition, and affirmatively alleged that in the conveyance of the 103-acre tract to Mayes by Searcy a vendor's lien was retained to secure the payment of about $3,600 of purchase money remaining unpaid, and that its loan to Mayes was for the purpose of paying, and did pay that debt. The bank claimed the right of subrogation, and asked that its lien be adjudged superior to that asserted by the plaintiffs.

A personal judgment was awarded against the former sheriff and his surety. and it was further adjudged that the 103-acre tract was in lien to secure its payment, but that the lien of the Federal Land Bank was superior. From that judgment, the board of education and the surety company bring this appeal.

It does not appear in the record, although stated in briefs, that the appellant, Fidelity & Casualty Company, as surety on the bond, has satisfied the judgment, and thereby has the right of substitution for the board of education under the statutory lien (Dawson, etc. v. Lee, 83 Ky. 49; Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 32 Ky. Law Rep. 1065, 16 Ann. Cas. 840), but the omission from the record has apparently been waived by the parties, and will be so considered.

The subject of subrogation has recently been fully treated in a well-considered opinion prepared by Judge Willis, in Louisville Joint-Stock Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S. W. (2d) 113, and the principles and authorities of that case, applied to the one at bar, must control its determination.

The reserved vendor's lien was an original existing, substantive charge on the land at the time the statutory lien first attached. When the property was conveyed to the then sheriff in May, 1923, by Searcy, the latter's equity for the unpaid purchase money did not pass, and consequently never became subject to liability for the faithful accounting of taxes collected. True it is that the statutory lien is prospective, and may be retrospective so far as the sheriff's liability is concerned (see Mason v. Cook, 187 Ky. 260, 218 S. W. 741), and the Land Bank's mortgage was not given or recorded until after it attached to this land. But the bank's equity is not founded on the mortgage, but on its subrogation to the vendor's lien, which, as suggested, was at times older and superior to that of the appellants.

It is further urged upon us by appellants that the vendor's lien of Searcy was released, and not assigned to the bank, and also that the bank was a mere volunteer, and therefore not entitled to the right of subrogation; reliance being had on Wilson v. Smith, 213 Ky. 836, 281 S. W. 1008, Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931, and some other kindred cases. Those cases announce generally under what circumstances the right of subrogation will be recognized or denied, and then make application to the particular facts involved. It is the universally established law that a volunteer, loaning money with which to pay purchase-money notes, cannot claim the right. But no strict rule can be laid down, nor definition of a volunteer given with-

out qualification, as each case must be decided on its own merits. Bispham's Principles of Equity, sec. 337. It may, however, be said generally that the right of subrogation will arise where one has advanced money under an agreement, express or implied, made either with the debtor or creditor, that he should be subrogated to the rights and remedies of the creditor. Illinois Surety Co. v. Mitchell, supra; Louisville Joint-Stock Land Bank v. Bank of Pembroke, supra; U. S. Cast Iron Pipe & Foundry Co. v. Henry Vogt Machine Co., 182 Ky. 473, 206 S. W. 806. When one has thus advanced funds, he is not a volunteer or intermeddler, who is never given the benefit of the doctrine. One who is solicited to do a thing is not a volunteer. This is not placing the benefit on the basis of contract, but on the equities arising therefrom, for this court has often declared, on the highest authorities, that "the doctrine of subrogation is a pure, unmixed equity, having its foundation in the principles of natural justice." Id.; Ford v. Jones, 174 Ky. 252, 192 S. W. 28.

A well-reasoned case, applicable to conditions presented here, is Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31, 32 Am. St. Rep. 566, in which it is said:

"The better opinion now is that one who loans his money upon real estate security for the express purpose of taking up and discharging liens or incumbrances on the same property has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, nor is the debt, lien, or incumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor."

There are a number of similar cases in our own jurisdiction. One of them, showing the extent to which this court has gone in applying the doctrine of subrogation to a vendor's lien, is Bradford v. Howe, etc., 11 S. W. 466, 11 Ky. Law Rep. 10. In that case Price had retained a vendor's lien on land sold Phillips in 1868, and in 1875 Price's executor brought suit thereon. To settle the suit, Phillips gave the executor a mortgage on the

same land and an additional tract, assuring the executor there was no other incumbrance. The executor brought suit on this mortgage in 1877, and at the judicial sale he became the purchaser for much less than the debt, and conveyance was made to him. In the settlement of Price's estate, the land was sold to Bradford or his vendors. In 1870 (between the time the vendor's lien attached and the date of the mortgage to the executor) Phillips had mortgaged part of the same land to Howe and others, who instituted suit to enforce their mortgage, alleging they were not parties to the former proceedings and that their mortgage was given five years before that of Price's executor. It was held that the original purchase-money lien of Price created in 1868 still remained unsatisfied and should be paid before the Howe mortgage. To the same effect are Price v. Davis, etc., 22 S. W. 316, 15 Ky. Law Rep. 120; Greishaber's Ex'rs v. Farmer's Ex'rs, 42 S. W. 742, 19 Ky. Law Rep. 1028; Bartley, etc. v. Knott, etc., 140 Ky. 288, 130 S. W. 1096; and Chilton v. Chilton, 217 Ky. 258, 289 S. W. 275.

In enforcing the right of subrogation, the purpose always is to make the application of equitable principles to the particular facts and to effectuate the administration of natural justice between all parties concerned. That is the real doctrine of subrogation. One will not be permitted to secure an advantage to the prejudice of another; nor will his rights be diminished in any degree to further the interest of such other.

By subrogating the appellee bank to the rights of Searcy under his purchase-money lien, the appellants are not in the least prejudiced; their rights have not been diminished, for they yet have the same security. The appellee bank in good faith loaned money to Mayes, with which to pay Searcy. At that time it appears that the obligation sued on had not in fact arisen, and there was no presumption that Mayes would fail to render a proper accounting. All the equities are with the appellee, and the chancellor made no error in adjudging priority to its lien.

The judgment is accordingly affirmed.