# New York Underwriters Ins. Co. v. Louisville & N. R. Co. et al.

Feb. 28, 1941.

Hite Huffaker and George Batterton for appellant.

William Blanton and V. A. Bradley for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

George K. Pepper, a farmer 82 years of age, and his tenant, Ed Igo, jointly owned a crop of tobacco of the undisputed value of $1,700, which they had insured with the appellant, New York Underwriters Insurance Company, for $625. The policy contained a provision subrogating the insurance company to the right of the insured against any third person who might bring about

a loss of the insured's property by fire. The tobacco was burned on September 16, 1931, through the alleged negligence of the appellee, Louisville & Nashville Railroad Company, in permitting sparks to escape from one of its passing engines.

Negotiations were entered into between the insured, the railroad and the insurance company to settle the loss. On January 16, 1932, Jenkins, the claim agent for the railroad company, wrote Bray, an adjuster for the insurance company, asking if the latter company had settled this loss; and if so, what agreement as to subrogation had been made. Jenkins' letter stated that if no settlement had been made, he would be glad to discuss settlement with Bray at a meeting with the insured in Paris, Kentucky, on January 20th. Bray did not attend the meeting, and the insured would not settle in his absence.

On February 10, 1932, without Bray's presence but relying upon the representations of Jenkins that the settlement with the railroad company would not affect their right to collect the insurance, and relying further upon the advice of Woodford, vice president and cashier of the Bourbon Agricultural Bank & Trust Company, who was also an agent of the insurance company in selling them the policy, the insured settled their loss with the railroad for $670 and executed to the railroad a release, the pertinent parts of which read:

"For and in full compromise, settlement, discharge and satisfaction of all claims, demands or causes of action on account of all * * * damage to and loss of property as a result of fire alleged to have been set out by passing trains, burning tobacco * * * in consideration of the payment to me of the sum of $670, we, George K. Pepper and Ed. Igo, of Paris, in the County of Bourbon and State of Kentucky, do hereby release and forever discharge the Louisville & Nashville Railroad Company, and its officers, agents and servants from all suits, actions, causes of action, claims and demands of every character whatsoever that I now have or may hereafter have, growing out of any and all injuries to persons and damage to property in consequence of, or in anywise connected with the above accident."

This receipt was signed by both Pepper and Igo.

The insurance company on March 10, 1932, paid Pepper and Igo the face value of the policy, $625, and on March 19, took from them a subrogation whereby the insured in consideration of $625 paid them for their loss by the insurance company assigned to the latter:

"All the right, claims, interest, choses or things in action, to the extent of $625, paid us as aforesaid, which we may have against Louisville & Nashville Railroad or any other party, person or corporation, who may be liable or hereafter adjudged liable for the burning or destruction of said property, and hereby authorize and empower the said New York Underwriters Insurance Company to sue, compromise or settle in our name or otherwise to the extent of the money paid as aforesaid; and it is hereby fully substituted in our stead and subrogated to all our rights in the premises. It being expressly stipulated that any action taken by said company shall be without cost or charge to us."

On February 28, 1934, the insurance company filed the suit against the railroad company alleging the fire was caused by the latter's negligence; that it paid $625 to the insured, who had assigned their claim against the railroad to it in compliance with the terms of the policy; recovery was asked for $625. By an amended petition, Pepper and Igo, as assignors to the plaintiff of the claim sued on, were made formal defendants.

The first paragraph of the railroad's answer was a traverse; the second pertained to spark arrestors; the third pleaded that the payment of $670 and the release were made with the knowledge of the insurance company and before it made payment of $625 and before the subrogation agreement was obtained by the insurance company, and the release fully discharged the railroad from all loss growing out of this fire.

The reply consisted of four paragraphs. The first two being traverses, while the third pleaded the railroad knew of the insurance policy and that it gave the insurer the right of subrogation and the railroad knew the insurer had not paid the loss; that the $670 paid by the railroad was only for a part of the loss and did not cover that part of the loss the insurer sustained by payment of the policy to Pepper and Igo, and the release in full was obtained by fraud upon the part of the railroad.

A fourth paragraph of the reply pleaded the payment by the railroad was intended to cover only the loss over and above the insurance carried on the tobacco, and that by fraud on the part of the railroad and mistake on the part of the insured a clause to that effect was omitted from the release, and asked that the release be reformed so as to include such clause and to express the true contract of the parties. An amended reply averred such omission was due to mistake or fraud on the part of the railroad company. A rejoinder and surrejoinder completed the issue.

The court sustained a demurrer to the third paragraph of the reply and on final judgment denied the reformation of the release given the railroad by the insured and dismissed the petition. The chancellor very briefly recited in the judgment that as the insurer had notice of the settlement between the railroad and the insured and had time and opportunity to protect its right of subrogation and having failed to do so, it was bound by the release given to the railroad by the insured.

There is practically no contrariety in the evidence. Pepper and Igo, the insured, Woodford, the agent of the insurance company who sold them the policy, and Jenkins, the claim agent for the railroad and its sole witness, all testified to the effect that in settling with the railroad for $670, there was no intention on the part of the insured or the railroad to release the insurance company from its liability to Pepper and Igo, and none of the parties to the release intended it to have any effect upon the insurance company. This being true, the parties to the release could not have had in mind any other idea than that the railroad was paying $670 on that part of the $1,700 loss which was not covered by the $625 insurance policy. Had the railroad been settling the loss in full, Pepper and Igo would have had no claim against the insurance company, and all the witnesses expressly testified the agreement was that the liability of the insurance company was not to be affected by the release. There was no reason for the railroad to settle the insurance company's loss and at a figure $45 in excess of its policy. There had been a $1,700 loss and the railroad knew $625 of it was covered by insurance. It further knew the policy had a subrogation clause and that it would be called upon to make good the insurance com-

pany's loss (letter from Jenkins to Bray). The railroad also knew it was liable for the whole $1,700 loss if it could be established the fire was the result of its negligence. In the circumstances it cannot be doubted that when the railroad settled with Pepper and Igo for $670, it was settling that part of the loss over and above, and not covered by the $625 insurance carried on the property.

When the insurance company sued the railroad on its subrogation obtained from Pepper and Igo, the absolute release obtained from them was pleaded in bar to the action. At the time the insurer paid the loss it knew of the settlement by the railroad with Pepper and Igo and of the release taken from them. If this release stands, it bars recovery by the insurance company because it wipes out all claims of Pepper and Igo against the railroad, leaving them nothing to assign to the insurance company, and puts the latter in the position of a volunteer making the subsequent payment of $625 to the insured, 26 C. J. 457, Section 619, and page 459, Section 623; Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931; Com. v. Federal Land Bank of Louisville, 226 Ky. 628, 11 S. W. (2d) 698. See 14 R. C. L. 1404, Section 568.

There is no evidence of fraud on the part of Jenkins, the railroad claim agent, in procuring this release, and the appellee argues we cannot consider any mutual mistake of the parties, since there was no plea of mutual mistake, and proof without pleadings is unavailing. Pilcher v. Stadler, 276 Ky. 450, 124 S. W. (2d) 475. It is in error when it says there is no pleading of mutual mistake. In the fourth paragraph of its reply the insurance company avers that by fraud upon the part of the railroad and mistake upon the part of the insured, there was omitted from the release a clause that the settlement was for the loss in excess of the insurance. By the amended reply it is averred this omission from the release was made "either by fraud on the part of the Louisville & Nashville Railroad, or by reason of mistake on the part of said railroad company." Although the term "mutual mistake" is not used in the pleadings, the amended reply avers the omission was due to fraud or mistake on the part of the railroad, while the reply avers it was due to fraud on the part of the railroad and mistake on the part of the insured. When such allega-

tions of the reply and amended reply are taken together, or considered as a whole, they sufficiently plead mutual mistake, Rowe v. Ratliff, 201 Ky. 151, 255 S. W. 1025.

A contract of settlement which bars recovery on an insurance policy may be rescinded or reformed by a court of equity, when the evidence justifies, so that recovery may be had on the policy, Titus v. Rochester German Ins. Co., 97 Ky. 567, 31 S. W. 127, 28 L. R. A. 478, 53 Am. St. Rep. 426; Inter-Southern Life Ins. Co. v. Stephenson, 246 Ky. 694, 56 S. W. 332. The evidence in this record is clear and convincing that the contract of release between the railroad and the insured was that the $670 paid by the railroad was for the loss in excess of the insurance carried, and the only release insured intended to give, and the railroad to take, was a release of their claim against the railroad for their loss in excess of their insurance. The chancellor erred when he sustained a demurrer to the third paragraph of the reply and when he did not reform this release by inserting therein a clause that the $670 was paid for the loss over and above the insurance, and that the railroad company was not released absolutely.

Appellee argues there is no privity between the insurance company and the railroad, hence the former cannot maintain this action. The policy provided the insurance company would be subrogated to the rights of the insured against any wrongdoers burning the property. Pepper and Igo, in accordance with the provisions of this policy, assigned to the insurance company their claim against the railroad upon the payment by the insurer of the policy loss. Thus the subrogation provision of the policy and the subsequent assignment by the insured of their claim against the railroad established privity by contract. 50 C. J. 408, Section 4; A. H. Thompson Co. v. Security Ins. Co., 252 Ky. 427, 67 S. W. (2d) 493. It must be admitted that if the release stands, there would be no privity between the insurer and the insured, as the contract between them would be terminated. Also, the release would wipe out the insured's claim against the railroad and they would have nothing to assign. The privity being thus destroyed between insured and insurer, it follows there would be none between insured and the railroad. But since we are of the opinion the release did not affect that part of Pepper's and Igo's loss covered by the insurance, and

since the release must be reformed to so show, there is privity between the insurance company and the railroad company because the former by contract stands in the shoes of Pepper and Igo.

We are not impressed by the railroad's argument that the insurance company has been guilty of laches, therefore it cannot maintain this action. While the insurance company was dilatory in the manner in which it handled its claim against the railroad, there was no damage to the latter on account of this delay. As we have so often written, laches is something more than delay—it is negligent delay which leads another to change his position to his detriment. Here there was no change of position by the railroad company and it was not hurt by the insurance company's lack of diligence; therefore it is in no position to complain of the latter's delay. McKenney v. Page, 146 Ky. 682, 143 S. W. 382; Kentucky Title Trust Co. v. Weil, 281 Ky. 763, 136 S. W. (2d) 1097.

The judgment is reversed with directions to the chancellor to overrule the demurrer to the third paragraph of the reply and to enter an order reforming the release as indicated in this opinion.

Judgment reversed.