In re CONTRACTOR TECHNOLOGY, LTD., Debtor.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Katy Steel Co., Inc., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Bell Bottom Foundation Company, Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

FleetCor Technologies Operating Co., L.L.C., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Sunbelt Works, Inc., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Century Asphalt Materials, L.L.C., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Oldcastle Precast, Inc., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

G–Man Marble & Tile, Inc., Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

Cipriano Varela, Defendant.

Ronald J. Sommers, Chapter 7 Trustee, Plaintiff,

v.

SBC Communications, Inc., Defendant.

Bankruptcy No. 05–37623.
Adversary Nos. 05–3801, 05–3802, 05–3806, 05–3807, 05–3808, 05–3844, 05–3845, 05–3896, 05–3899.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 20, 2006.

Blake E. Rizzo, Porter & Hedges, LLP, Baton Rouge, LA, for Ronald J. Sommers, trustee.

Duane J. Brescia, Strasburger & Price, LLP for Katy Steel Co., Inc., in adversary no. 05–3801.

Steven A. Leyh, Leyh & Payne, LLP, Houston, TX, for Bell Bottom Foundation Co.; Cynthia Williams Cole, Godwin Gruber, LLP, for St. Paul Fire and Marine Insurance Co., in adversary no. 05–3802.

S. Ault Hootsell, III, Phelps Dunbar, New Orleans, LA, for FleetCor Technologies Operating Co., LLC a/k/a Fuelman, in adversary no. 05–3806.

Brad L. Sklencar, Thomas J. Walthall, Jr., The Gardner Law Firm, San Antonio, TX, for Sunbelt Works, Inc., in adversary no. 05–3807.

Eric B. Terry, Wallis Abigail Ottmers, Haynes and Boone, LLP, Dallas, TX, for Century Asphalt Materials, LLC; Cynthia Williams Cole, Godwin Gruber LLP, for S. Paul Fire and Marine Insurance Co., in adversary no. 05–3808.

Emily Yee Hua Chan Nguyen, William R. Sudela, Grady Jewett and McCulley for Oldcastle Precast, Inc., in adversary no. 05–3844.

Calvin C. Braun, Houston, TX, for G–Man Marble & Tile, Inc.; Cynthia Williams Cole, Godwin Gruber, LLP, for St. Paul Fire and Marine Insurance Co. (3rd pty def.), in adversary no. 05–3845.

Ian M. Cain, Houston, TX, for Cipriano Valera d/b/a Gube Trucking, in adversary no. 05–3896.

Ray Schorre, for SBC Communications, Inc., in adversary no. 05–3899.

## ORDER DENYING MOTION FOR RECONSIDERATION

MARVIN ISGUR, Bankruptcy Judge.

On May 22, 2006, Defendants in seven[1] of the above-referenced adversary proceedings filed a joint motion to reconsider the amended order on cross-motions for summary judgment dated May 11, 2006. For the reasons set forth below, the motion to reconsider is denied.

Because the motion to reconsider raises issues relevant to all of the captioned adversary proceedings, the Court issues this memorandum opinion in each of the captioned proceedings.

### Background

Contractor Technology Ltd. filed a voluntary chapter 11 bankruptcy petition on May 13, 2005. The case was converted to a case under chapter 7 on June 23, 2005. Ronald J. Sommers was appointed chapter 7 Trustee.

Contractor Technology was a construction company that served as general contractor on various public works projects in Texas. In performing its work, Contractor Technology routinely engaged in transactions with subcontractors and materialmen to perform certain services or provide goods. The Defendants in these adversary proceedings each allege that they are either subcontractors or materialmen under Texas law, entitled to the benefits of Texas trust fund statutes and earmarking under Texas law.

Shortly before the May 13, 2005 bankruptcy filing, each of the Defendants received a check that purported to pay a prepetition invoice. After the petition date, the checks were all presented for payment from Contractor Technology's bank account.

The Trustee made a timely demand against each Defendant, alleging that the payment of the checks constituted an avoidable transfer under 11 U.S.C. § 549. When the Defendants failed to pay the Trustee, the Trustee timely commenced these adversary proceedings.

The Trustee seeks to avoid the payments as unauthorized post-petition transfers pursuant to 11 U.S.C. § 549. With one exception,[2] the Court granted the Trustee summary judgment in an order dated May 11, 2006.[3]

---

1. The motion to reconsider was filed in adversary nos. 05–3801, 05–3802, 05–3807, 05–3808, 05–3844, 05–3845 and 05–3896.

2. The Trustee's motion for summary judgment was denied in *Sommers v. SBC*, Adv. No. 05–3899. Neither party has filed a motion to reconsider in that proceeding.

3. The Court originally granted the Trustee's motions for summary judgment in an order dated May 5, 2006. On May 11, 2006, the Court issued an amended order in response to

The principal issue in these adversary proceedings is whether the Defendants should be allowed to retain funds received by them after the filing of the petition, based on their allegations that the funds were held in trust for them under Texas law. The trust fund argument is a defense raised to the § 549 complaints. Because the existence of a trust fund[4] would not obviate the defendant's duty to return the funds, the Court finds that the defense fails.

If there is a trust—and an ultimate shortage of funds in the trust to pay all beneficiaries—it would be wholly inequitable for certain trust fund claimants (*i.e.*, those who did not receive an unauthorized post-petition funds transfer) to have lost their beneficial interest in the trust funds because the chapter 11 debtor allowed the limited and inadequate funds to leave the estate.

### Motion to Reconsider

■ The motion to reconsider primarily argues that the Court misinterpreted the Supreme Court's ruling in *Begier v. I.R.S.*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). While this Court has carefully considered the arguments presented in the motion to reconsider, it disagrees with the Defendants and maintains its view of *Begier*.

The motion to reconsider takes the ruling in *Begier* out of context when applied to these adversary proceedings. *Begier* never truly considers post-petition transfers under 11 U.S.C. § 549. The Defendants disagree with this Court's prior language stating that *Begier* "did not address the issue of a post-petition transfer of legal title rather than beneficial ownership."

The Court's reading of *Begier* has not changed.

The Defendants' motion also points to Court to *In re Suwannee Swifty Stores, Inc.*, 266 B.R. 544 (Bankr.M.D.Ga.2001). The Defendants' reading of *Suwannee* is misplaced. There are two critical distinctions between Suwannee and these cases.

First, *Suwannee* involved a single beneficiary. With a single beneficiary, the only issue was whether that beneficiary was entitled to the funds. The court in *Suwannee* was ultimately faced with the question of whether to order a futile outcome—the return of the funds only to redistribute the same funds to the same beneficiary. Courts cannot be expected to order parties to engage in futile acts, and thus the analysis of *Suwannee* carries little weight without keeping that fact in mind. The *Suwannee* Court did not consider § 549 recoveries when there are multiple beneficiaries, only some of whom received an unauthorized distribution. To the extent that *dicta* in *Suwannee* contradicts the holding in this case, then this Court disagrees with *Suwannee*.

In these adversary proceedings, the Court must consider the equitable distribution of potentially insufficient funds. If a trust exists, and the Defendants are entitled to trust fund payments, the money must still return to the Trustee to ensure an equitable distribution. To return the money and later redistribute it to all trust fund beneficiaries in the present case is by no means a futile act.

■ Second, *Suwannee* is inapplicable because *Suwannee* does not discuss what happens when a trustee seeks to recover legal title. Rather, in *Suwannee*, the debtor was attempting to alter the nature of

the Trustee's motion to amend. The May 11, 2006 order supersedes the May 5, 2006 order.

4. This Court has not yet decided the issue of whether a trust exists-only whether the funds must be returned to the Trustee.

the transfer at issue under a § 549 claim. The debtor sought to change the interest from a legal interest to a beneficial interest. Such a change cannot occur under the statute, as § 549 does not provide any mechanism for altering the nature of funds. Consequently, § 549 must be read to return funds to the estate as the funds were before the initial post-petition transfer occurred—a legal interest returns as a legal interest. Thus, *Suwannee* ultimately deals with the debtor attempting to recover a beneficial interest, and does not address what happens to a legal interest when a debtor seeks to recover legal title. In the present case, the Court orders the return of the funds, but with their original status. To the extent that the Trustee holds only legal title, he is only recovering legal title; to the extent that the Trustee holds legal and equitable title, he is recovering both.

■ The Trustee in this case alleges that he always held both legal and beneficial interest to the relevant funds. That issue is not resolved in this adversary proceeding. Once the funds are recovered, the Trustee will be required to seek further orders from this Court before the funds are distributed. Motions for distribution must be filed in the main bankruptcy case. Otherwise, the other potential beneficiaries of the trust will not be able to participate in the dispute. The Court declines the Defendants' invitation to issue distribution orders in these adversary proceedings. To do so would adversely affect the due process rights of other potential claimants. For example, if the Court determines that the funds are *not* trust funds and should be available for general distribution, the other trust fund claimants would have been deprived of their right to participate in the litigation. Similarly, if the Court determines that the funds *are* trust funds, the other trust fund claimants would be deprived of their right to participate in how the limited funds should be allocated.

The Trustee's rights to recover wrongful or excessive distributions [5] are well-defined by general principles of trust law.[6] Two considerations initially arise: (1) whether the Trustee is the appropriate party to bring this action, and (2) whether general principles of trust law dictate the recovery to the Trustee of the previous distributions.

■ General principles of trust law mandate that the Trustee is the appropriate—and perhaps the only eligible—party to bring this action. When pursuing wrongfully held property from a third party, "the trustee is usually the only proper party plaintiff to sue ... to restore possession to the trustee." BOGERT TRUSTS AND TRUSTEES (2ND ED. REV.). § 869, at 114. Specific instances do exist when beneficiaries may be allowed or required to sue in place of the trustee, but none apply here. *See id.* at 117–23. More generally, a trus-

5. The distributions made by the Debtor were not made on a *pro rata* basis to all beneficiaries in compliance with general principles of equity. Texas law generally requires a pro rata distribution of funds when there are insufficient funds to pay all beneficiaries in full. *See, e.g., Ertel v. O'Brien*, 852 S.W.2d 17, 20–21 (Tex.App.—Waco, 1993) (citing § 321 of the Texas Probate Code).

6. In this context, general principles of trust law are in conformity with the Texas Trust Act (chapters 111 through 115 of the Texas Property Code), which states, in relevant part:

A beneficiary is liable for loss to the trust if the beneficiary has ... (4) failed to repay a distribution or disbursement from the trust in excess of that to which the beneficiary is entitled....

TEX PROP.CODE § 114.031(a). However, the Texas Property Code specifically excludes construction trusts from the Texas Trust Act. TEX. PROP.CODE § 162.004(b).

tee usually has legal title to the trust property "and almost always has all the powers of management and control which are necessary to make the trust property productive and safe.... The right to sue in the ordinary case vests in the trustee as a representative." *Id.*, at 112–13. Thus, general principles of trust law establish the Trustee as the appropriate party to bring the present action.

▪ The Court now turns to the second consideration: whether general principles of trust law dictate the recovery to the Trustee of the previous distributions. Indeed, the Trustee may recover the distributions. Both general principles of trust law and the Texas Trust Act[7] provide for the recovery of excess distributions[8] by a trustee.[9]

Although there are only a limited number of reported cases that deal with non-*prorata* distributions, a trust's right to recover has been settled law for at least a century. In *Thomas Corp. v. Nicholas*, 221 F.2d 286, 290 (5th Cir.1955), a receiver made improper payments to creditors of the estate. The court stated that the receiver "may of course have rights to recover money paid to the other creditors which has unjustly enriched them, according to the principles of the law of restitution." *Id.* In *Old Colony Trust Co. v. Wood*, 321

Mass. 519, 526, 74 N.E.2d 141, 146 (Mass. 1947), the court ordered relinquishment of funds the trustee had erroneously transferred to Ms. Wood, who had—at best— questionable rights to the trust property. The court considered it "fundamental that in the hands of [Ms. Wood] the property and proceeds thereof remained impressed with the same trust upon which they were held by [the trustee], subject to be followed into [Ms. Woods'] hands and recovered from her by [the trustee] or those entitled thereto." *Id.* In *Wood v. Kelley*, 281 Ill.App. 207 (Ill.App. 2 Dist.1935), the court was faced with a trustee who had preferred some beneficiaries over others, rather than engaging in a *pro rata* distribution of the limited funds. The court stated that:

> One who acquires property from a trustee, with actual or constructive notice that it is trust property, will be held to properly account therefore to others who are entitled to share in the benefits of the trust, and persons so receiving such property cannot do so to the injury of the other *cestuis que trustent.*

*Id.* The court also generally noted that "[a] person who wrongfully or fraudulently obtains title or possession to property in which he has no right cannot equitably

---

7. *See supra, n. 6.* While the Texas Trust Act does not apply to construction trusts, its consistency in this context with general principles of trust law—as well as an absence of any conflicting Texas state law—makes the language in the Texas Trust Act persuasive.

8. The amount of excess in the distributions to these beneficiaries is not currently clear. Nonetheless, if a trust does exist, a *pro rata* distribution of the trust funds to all beneficiaries will almost surely result in a lesser distribution to the Defendants in this action. As such, the full amount of the distribution must be recovered by the (potential) trust to facilitate an appropriately equitable *pro rata* distribution—as required by Texas law—at a later

date. *See Ertel v. O'Brien*, 852 S.W.2d at 20–21 (citing Texas Probate Code § 321).

9. The Court also notes that nothing prevents such recovery by a trustee:

> The rule of law that money voluntarily paid under a claim of right, with full knowledge of the facts on the part of the one making payment, cannot be recovered unless there is fraud, or concealment, or compulsion by the party enforcing the claim, has no application where money erroneously paid was held on a trust for the benefit of others who had no part in its erroneous delivery and payment by the trustee.

90A Corpus Juris Secundum § 662 (2006).

retain such property." *Id.* The Court has been unable to locate any authority that holds that a recipient of an excess trust fund distribution should not be required to repay the excess funds to the trust.

The distributions at issue either consist of trust fund money or money that is not subject to a trust fund. If the money is not subject to a trust fund, both the beneficial and legal title to the funds are estate property under § 541 of the Bankruptcy Code—and consequently recoverable by the Trustee under § 549. Conversely, if the distributions consisted of trust fund money, the beneficial rights to the money remains subject to the trust. General principles of trust law dictate that trust assets remain in trust, regardless of how the asset is distributed. " '[A]ll property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust.' " BOGERT TRUSTS AND TRUSTEES (2ND ED. REV.), § 866, at 95 (quoting *Hill v. Flemming,* 107 S.W. 764, 766, 128 Ky. 201 (Ky.1908)). The only two limitations to this right to recovery trust fund property—the bona fide purchaser rule and insufficiency of identification—are inapplicable here. *See id.,* at 97.

Consequently, the Trustee is entitled to recover the previously distributed funds from the Defendants. Any other result would contravene the Bankruptcy Code and general principles of trust law.

### Prejudgment Interest

The Trustee's request for pre-judgment interest is granted. The Trustee is entitled to prejudgment interest on all claims at the rate set forth in 28 U.S.C. § 1961(a).

### Conclusion

The motion to reconsider is denied. The Court will issue separate judgments in each adversary proceeding. Within 15 days of entry of this Order, the parties shall file proposed forms of judgments.